# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-02019-SCT

*RICHARD N. ANDERSON, JR. a/k/a*
*RICHARD NETRAIL ANDERSON, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/8/2003 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LAUREL G. WEIR |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/18/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Richard N. Anderson, Jr., was indicted for sale of marijuana, less than once ounce, by a Leake County Grand Jury on April 30, 2003.  After a jury trial in the Circuit Court of Leake County, Anderson was found guilty and sentenced to three (3) years in the custody of the Mississippi Department of Corrections.  He was also ordered to pay a fine of $3,000 and $548 for court costs.

¶2.     After denial of post-trial motions, Anderson appeals and raises the following issues on appeal:

I.  Did the lower court err in not granting an alibi instruction?

II.  Is the verdict of the jury and judgement of the court contrary to the overwhelming weight of the law and evidence and not supported by any law or evidence?

III.  Whether the chain of custody of the alleged marijuana was proven.

IV.  Did the Appellant receive a fair and impartial trial due to inefficient representation by his attorney?

## FACTS

¶3.     Agents James Nichols, James Ragan and Allen Ward are employed with the Mississippi Bureau of Narcotics ("the MBN").  On or around November 27, 2002, they set up an undercover sting operation in Leake County.  In order to facilitate an arrest, Leake County Sheriff Greg Waggoner and an informant, Christopher Wilder, provided the MBN agents with contacts in Leake County.  The agents would be making undercover drug purchases with the assistance of Sheriff Waggoner and Wilder.  Wilder, the informant, was fitted with a concealed microphone, and he and his vehicle were searched prior to any attempted purchases.

¶4.     Agent Ragan and Wilder then proceeded to Anderson's house to purchase marijuana from him.  After Wilder introduced Ragan to Anderson, Ragan subsequently purchased $40 worth of marijuana from Anderson.

## DISCUSSION

### I.  Alibi instruction.

¶5.     In *Wilcher v. State*, 479 So. 2d 710, 712 (Miss. 1985), this Court stated that issues not raised with the trial court may not be raised for the first time on appeal.  Issues not brought

2

to the trial court's attention are deemed waived. *Id.* Furthermore, in ***Brown v. State***, 751 So. 2d 1155, 1160 (Miss. Ct. App. 1999), the Court of Appeals stated that, "'[T]he trial judge shall not be put in error for his failure to instruct on any point of law unless specifically requested in writing to do so.'" *Id.* (quoting ***Newell v. State***, 308 So. 2d 71, 78 (Miss. 1975)).

¶6.     In the case sub judice, Anderson argues that he was entitled to an alibi instruction even though he failed to request one. Furthermore, he did not mention such an instruction in his motion for a new trial or JNOV. We find that Anderson is procedurally barred from raising this issue for the first time on appeal.

¶7.     Anderson further argues that even though he did not request one, the trial judge should have given one sua sponte and that the failure of the trial judge to do so was error. Anderson cites ***Gordon v. McDonald***, 743 So. 2d 1029 (Miss. Ct. App. 1999), in support of his proposition. However, ***Gordon*** held that the trial judge should instruct the jury sua sponte when an instruction submitted by counsel is *defective*. ***Id.*** at 1032. Therefore, the case sub judice and ***Gordon*** are distinguishable; Anderson never requested an alibi instruction and, thus, an instruction which has not been requested cannot be defective. Notwithstanding the procedural bar for failing to request an instruction initially, we find that the trial judge did not err in failing, sua sponte, to give an alibi instruction.

       **II. JNOV and new trial.**

¶8.     The standard of review for the denial of a motion for directed verdict and a judgment notwithstanding the verdict is the same. ***Shelton v. State***, 853 So. 2d 1171, 1186 (Miss. 2003). Motions for directed verdict and JNOV implicate the sufficiency of the evidence

presented at trial.  *Id.*  In assessing the legal sufficiency of the evidence on a motion for a directed verdict or a motion for JNOV, the trial judge must accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and must disregard evidence favorable to the defendant.  *Yates v. State*, 685 So. 2d 715, 718 (Miss. 1996); *Kittrell v. State*, 806 So. 2d 1140, 1143 (Miss. Ct. App. 2001).

¶9.    This Court's standard of review on the question of the legal sufficiency of the evidence is clearly defined.

> [I]t is a fundamental principle of law that jury verdicts will not be disturbed except under the most dire of circumstances.  Accordingly, in our review of criminal convictions, we consider the evidence in the light most favorable to the conviction.  If then we decide that no reasonable person could have found the accused guilty beyond a reasonable doubt, the verdict will be set aside. *However, if our review reveals that "reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb."*

*King v. State*, 798 So. 2d 1258, 1261 (Miss. 2001) (internal citations omitted) (emphasis added).  On a motion for a new trial, we look to determine whether the jury verdict is against the overwhelming weight of the evidence.  *Montana v. State*, 822 So. 2d 954, 967 (¶ 61) (Miss. 2002).  In doing so, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.  *Id.* at 967-68.  Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.  *Id.* at 968.  Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict.  *Mitchell v. State*, 572 So. 2d 865, 867 (Miss. 1990).

4

¶10. In the case sub judice, Anderson argues that not only was he entitled to a JNOV, but also entitled to a new trial. When the evidence presented by the State was taken together with all reasonable inferences, there was more than sufficient credible evidence in support of the trial court's denial of Anderson's motions.

¶11. First, the confidential informant, Chris Wilder, identified Anderson as the person who sold the marijuana to Agent Ragan. The record shows that Wilder had known Anderson since childhood and even lived in his home for some periods of time.

¶12. Secondly, Agent Ragan, who purchased the marijuana, also identified Anderson as the individual who sold the marijuana to him. Ragan testified that he had an "opportunity to get a good and clear specific look" at Anderson when he purchased $40.00 worth of marijuana from him. This occurred while Anderson was in front of his residence sitting in his maroon Chevrolet Caprice.

¶13. Thirdly, Sheriff Waggoner testified that he saw Anderson's face when Anderson was standing in his driveway next to his maroon Chevrolet Caprice. This occurred 2 or 3 minutes after he had monitored a conversation about the marijuana sale.[1]

¶14. Lastly, Agent Nichols testified that he and Sheriff Waggoner were conducting surveillance for the undercover operation and that he heard a marijuana purchase being discussed by Agent Ragan and Wilder. Agent Nichols also testified that when he and Sheriff

---

[1] Sheriff Waggoner and Agent Nichols were conducting audio surveillance for the undercover operation from a van nearby.

Waggoner passed by Anderson's yard, he saw Anderson in the driveway 2 or 3 minutes after the sale.[2]

¶15. In conclusion, when the evidence presented by the State is taken together with all reasonable inference, there is an abundance of sufficient credible evidence in support of the trial court's denial of Anderson's motions. Consequently, Anderson's argument is devoid of any merit.

### III. Chain of custody.

¶16. In *Wilcher*, this Court stated that issues not raised with the trial court may not be raised for the first time on appeal. 479 So. 2d at 712. Issues not brought to the trial court's attention are deemed waived. *Id.*

¶17. We find that this issue is procedurally barred. Anderson failed to object to the admission of the marijuana into evidence; furthermore, this issue was not raised in Anderson's motion for a new trial or motion for JNOV. Therefore, Anderson has waived his right to appeal this issue.

¶18. Notwithstanding the procedural bar, we will analyze Anderson's allegation regarding a "chain of custody" violation, where he submits that the marijuana should not have been admitted into evidence. In support of his argument Anderson asserts that there was inadequate testimony regarding who delivered or returned the marijuana from testing.

¶19. Admissibility of evidence, in the context of the issue now before us, is governed by the provisions of Mississippi Rule of Evidence 901(a), which requires the proponent to produce "evidence sufficient to support a finding that the matter in question is what its

---

[2] This undercover operation occurred during the daylight hours.

proponents claim." M.R.E. 901(a). In *Gibson v. State*, 503 So. 2d 230, 234 (Miss. 1987), this Court ruled that the "test for the continuous possession [i.e., "chain of custody"] of evidence is whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence." "[M]atters regarding the chain of custody of evidence are largely within the discretion of the trial court, and absent an abuse of discretion, reversal will not be granted." *Thomas v. State*, 828 So. 2d 1270, 1272 (¶ 7) (Miss. Ct. App. 2001). This Court should not reverse a trial court's ruling unless this discretion has been "so abused as to be prejudicial to the defendant." *Lambert v. State*, 462 So. 2d 308, 312 (Miss. 1984). "In such matters, the presumption of regularity supports the official acts of public officers," and, thus, the burden to produce evidence of a broken chain of custody is on the defendant. *Nix v. State*, 276 So. 2d 652, 653 (Miss. 1978).

¶20. Here, the record reflects that State's Exhibit 1, the alleged marijuana, was properly identified as being the same substance that Agent Ragan purchased from Anderson. During the direct examination of Agent Ragan, the following dialogue ensued:

> Q. Okay. Now I want to show you something and ask you to look at this and tell us if you can identify that, and if you can, tell us what it is.
>
> A. (Examining) This is the clear plastic bag of marijuana that the defendant gave to me. The package inside of the evidence bag we placed the marijuana in, is the bag we place the drugs in after we make the purchase.
>
> Q. Is that the same package that you purchased that day from this individual?
>
> A. Yes, sir, it is. It has my initials, JR, on the bottom.
>
> Q. Did you package it in that bag there yourself?
>
> A. Correct.

7

¶21.   Brandy Goodman, a forensic scientist employed by the Mississippi Crime Laboratory testified that the numbers and the name of the defendant were on State's Exhibit 1.  In addition, it had a submission number, a laboratory number, and her initials, as the person who actually performed the tests to identify the substance contained inside the bag.  The following dialogue occurred at trial:

> Q.  Let me show you what has been marked for identification No. 1 to the State's case and ask you to look at that and tell us, if you can, if you can identify what that is?
>
> A.  (Examining) Yes, I can.
>
> Q.  Can you explain to us what the markings on the package mean?
>
> A.  Certainly.  I can recognize this by the Mississippi Crime Laboratory case number, submission number, as well as my initials and the date I sampled the case.
>
> Q.  And by looking at those numbers, can you tell us how those numbers or markings are associated with this particular case or this particular Defendant?
>
> A.  The evidence bag has Richard Anderson, Jr. written on it, as well as the evidence submission form, and the certified report by the Mississippi Crime Laboratory has Richard Anderson, Jr.
>
> Q.  All. right.  So, the numbers or the markings on the package match the numbers and so forth in your file?
>
> A.  Yes, it does.

¶22.   After reviewing the record in the present case, we find that there is no evidence of any indication or reasonable inference that the evidence was tampered with or substituted.  This Court has "never required the proponent to produce every person who handled the object, nor to account for every moment of every day."  **Butler v. State**, 592 So. 2d 983, 985 (Miss. 1991); see **Doby v. State**, 532 So. 2d 584, 588 (Miss. 1988).  The State provided sufficient

evidence to support the finding that the marijuana admitted into evidence was the same marijuana that Agent Ragan purchased from Anderson on November 27, 2002, and that the evidence had not been tampered with or substituted.

¶23.    Therefore, notwithstanding the procedural bar for failing to raise this issue prior to appeal, this assignment of error is lacking in merit.

### IV.  Assistance of counsel.

¶24.    On appeal, Anderson claims numerous instances of ineffective assistance of his trial counsel.  Namely, his attorney failed to object to hearsay testimony and leading questions.

¶25.    In order for Anderson to prevail on the issue of ineffective assistance of counsel, he must satisfy the two-pronged test set forth in ***Strickland v. Washington***, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064-65, 80 L. Ed. 2d 674, 693-95 (1984) and adopted by this Court in ***Stringer v. State***, 454 So. 2d 468, 476-77 (Miss. 1984).  Anderson must prove: (1) that his counsel's performance was deficient, and (2) that this alleged deficiency prejudiced his defense.  ***Lindsay v. State***, 720 So. 2d 182, 184 (Miss. 1998) (citing ***Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064-65, 80 L. Ed. 2d at 693-95).  The burden of proving both prongs lies on Anderson, who is faced with a rebuttable presumption that trial counsel is competent and his performance was not deficient.  ***Chase v. State***, 699 So. 2d 521, 526 (Miss. 1997).  Additionally, Anderson must show that there is a reasonable probability that but for the errors of his counsel, the judgment would have been different.  ***Fisher v. State***, 532 So. 2d 992, 997 (Miss. 1988).  Finally, this Court must determine whether trial counsel's performance was both deficient and prejudicial to the defense based upon the "totality of the circumstances."

*Carr v. State*, 873 So. 2d 991, 1003 (Miss. 2004) (citing *Carney v. State*, 525 So. 2d 776, 780 (Miss. 1988)).

¶26. First, Anderson argues that ineffectiveness is shown by the failure to object to the admission of certain hearsay. While Agent Nichols testified to hearing a conversation over a transmitter concealed on the undercover agent, he identified only the voices of Agent Ragan and the confidential informant, Wilder. He did not attempt to identify Anderson's voice and did not testify as to the actual words used in the conversation; he merely testified that it dealt with a purchase of marijuana.

¶27. Anderson further argues that his counsel failed to represent him fully on this issue by objecting to the admission of the evidence. "With respect to the overall performance of the attorney, 'counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, *or make certain objections fall within the ambit of trial strategy' and cannot give rise to an ineffective assistance of counsel claim*." *Carr*, 873 So. 2d at 1003 (quoting *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995)) (emphasis added). Even if the statement were to be found to be hearsay, nothing in the witness's hearsay statement added meaningfully or prejudicially to the evidence already before the jury and, for that reason, Anderson fails to satisfy the second prong of *Strickland*.

¶28. Anderson also argues that ineffectiveness is shown by counsel's failure to object to certain leading questions. We agree that there are instances of leading questions asked by the State without objection from Anderson's counsel. However, we agree with the Court of Appeals that "[l]eading questions . . . will rarely create so distorted an evidentiary presentation as to deny the defendant a fair trial." *Walker v. State*, 880 So. 2d 1074, 1077

10

(¶8) (Miss. Ct. App. 2004). After examining the situations in which leading questions were allowed without objection, we find no prejudice to Anderson. Thus, he fails to satisfy the second prong of *Strickland*.

¶29. In conclusion, Anderson fails to prove the first prong of *Strickland* in that counsel's performance was deficient; further, assuming arguendo, that counsel's performance was in fact deficient, he also fails to affirmatively prove he was prejudiced as required by the second prong of *Strickland.* The burden of showing prejudice cannot be met by merely alleging it. *Johnston v. State*, 730 So. 2d 534, 538 (Miss. 1997). Furthermore, Anderson has not affirmatively proven that the outcome of the trial would have been different.

## CONCLUSION

¶30. A defendant in a criminal case is not entitled to a perfect trial, only a fair trial. *Sand v. State*, 467 So. 2d 907, 911 (Miss. 1985). In the case sub judice, we are convinced that Anderson received a fair trial. Finding no merit in Anderson's assignments of error, we affirm the judgment of the Circuit Court of Leake County, Mississippi.

¶ 31. **CONVICTION OF SALE OF LESS THAN ONE OUNCE OF MARIJUANA AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY A FINE OF $3,000.00 AND ALL COSTS OF COURT, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING**.