986 So.2d 338 (2008)
Keith BASKIN a/k/a Keith K. Baskin, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01355-COA.
Court of Appeals of Mississippi.
January 8, 2008.
Rehearing Denied May 6, 2008.
*340 Joshua Aaron Turner, Merrida Coxwell, Jackson, attorneys for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before MYERS, P.J., GRIFFIS and CARLTON, JJ.
MYERS, P.J., for the Court.
¶ 1. Keith Baskin seeks review of his conviction of possession of a controlled substance with intent to sell as a habitual offender. Baskin contends the State failed to prove he had intent to distribute a controlled substance and, as such, the trial court erred in refusing Baskin's motions for a directed verdict and for a new trial. Additionally, Baskin maintains the trial court violated his Eighth Amendment rights because his sentence is grossly disproportionate to the offense. Further, in Baskin's last issue, he claims the trial court erred in allowing the State to amend the indictment after the jury verdict but before sentencing. Finding no error, we affirm.

FACTS
¶ 2. On the night of January 2, 2004, Keith Baskin was a passenger in a car driven by Dacorious Clark, and they were traveling north on Highway 49. The Mississippi Highway Patrol was conducting a safety checkpoint north of the Flora city limits on Highway 49. As Clark approached the checkpoint, he accelerated his car and struck the approaching officer, Master Sergeant Bradley, in the arm, then sped away. Sergeant Bradley and Trooper Steve Shows gave chase in their patrol cars, and noticed Baskin throwing bags out of the open passenger side of Clark's vehicle. Eventually, the car was stopped and the occupants were arrested. While Clark resisted arrest, Baskin was cooperative with law enforcement. During the short chase, Trooper Shows retrieved a bag containing 450.6 grams of marijuana, which had been thrown out of the moving vehicle by Baskin.
¶ 3. Baskin was charged with possession with intent to distribute a controlled substance. The indictment was later amended to charge Baskin as a subsequent offender because the State was aware of one previous drug conviction. Baskin was found guilty and convicted on March 17, 2006. After the conviction, the State moved to amend the indictment to charge him as a habitual offender, since it discovered during the pre-sentence investigation that Baskin actually had two previous convictions. The State's motion was subsequently granted. Baskin filed a motion for new trial, which was denied by the trial court. Baskin was sentenced to serve a term of sixty years in the custody of the Mississippi Department of Corrections without the possibility of parole. Baskin appeals that conviction and sentence.
¶ 4. Baskin alleges three points of error in this appeal. First, Baskin contends the State failed to present evidence establishing *341 that he had intent to sell the controlled substance and, as such, the trial court should have granted Baskin's motion for a directed verdict or his request for a new trial. Second, Baskin argues that his sentence is grossly disproportionate to the crime. Finally, Baskin challenges the trial court's decision to allow the State to amend the indictment after the jury verdict but before sentencing to charge him as a habitual offender.

DISCUSSION
¶ 5. A motion for directed verdict challenges the sufficiency of the evidence and the court will view the evidence in the light most favorable to the State. Dixon v. State, 953 So.2d 1108, 1111(¶ 4) (Miss. 2007). We will uphold a trial court's denial of a directed verdict when, "after considering all of the evidence, the evidence shows `beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.'" Id. (citing Carr v. State, 208 So.2d 886, 889 (Miss. 1968)). "[W]here the evidence fails to meet this test it is insufficient to support a conviction." Dixon, 953 So.2d at 1111(¶ 4).
¶ 6. A motion for new trial challenges the weight of the evidence. Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). We are to review a trial court's denial of a motion for new trial by weighing the evidence in the light most favorable to the verdict. Id. Reversal is only warranted if a trial court's ruling "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Id.

I. WHETHER THE TRIAL COURT ERRED IN DENYING BASKIN'S MOTION FOR DIRECTED VERDICT OR A NEW TRIAL
¶ 7. Baskin asserts that the trial court should have granted a directed verdict or ordered a new trial because the State failed to prove his intention to distribute marijuana. "Where the amount [of the controlled substance] is greater than what one might ordinarily have for personal consumption, it does create an inference of intent to distribute." Fox v. State, 756 So.2d 753, 759(¶ 19) (Miss.2000). "In either case, this Court must view the surrounding circumstances in determining the sufficiency of the evidence of intent." Id. Further, "intent is a question of fact to be gleaned by the jury from the facts shown in each case." Boyd v. State, 634 So.2d 113, 115 (Miss.1994) (citing Shanklin v. State, 290 So.2d 625, 627 (Miss.1974)). Additionally, "[i]ntent may be determined from the acts of the accused and his conduct and inferences of guilt may be fairly deducible from all the circumstances." Shive v. State, 507 So.2d 898, 900 (Miss. 1987).

A. SUFFICIENCY OF THE EVIDENCE
¶ 8. In the case sub judice, the record reflects that Trooper Steve Shows testified that the passenger in the car, Baskin, opened the door and began throwing what appeared to be bags out onto the highway. Trooper Shows further testified that he was able to retrieve the last bag that was thrown from the retreating car. Trooper Shows testified that large chunks of marijuana were scattered on the floor board, on and behind the passenger seat, and on the car floor.
¶ 9. Sergeant Bradley testified that there was marijuana residue in the car, as well as marijuana in the bag which was tossed out of the moving vehicle. Sergeant Bradley also testified there were multiple bags being thrown out of the vehicle at the time of the chase and subsequent *342 arrest. Here, there was testimony at trial that the amount in the bag was more than a single person would generally have for personal consumption.
¶ 10. Testimony from Archie Nichols, a chemical analyst from the Mississippi Crime Lab, opined that the bag of marijuana retrieved by officers would easily make anywhere from 450 to 900 marijuana cigarettes. This testimony supports the State's argument that Baskin had sufficient intent to distribute. Nichols testified that he deals with marijuana on a daily basis and examines marijuana joints routinely.
¶ 11. Further, testimony from the arresting officers in pursuit of the fleeing vehicle established that there appeared to be multiple bags being thrown out of the vehicle and a large amount of marijuana residue was discovered in the vehicle. The Mississippi Supreme Court has acknowledged the difficulty in determining the evidence necessary to establish intent to distribute. "In drafting the statute, the legislature has not set out any parameters of `intent.'" Jones v. State, 635 So.2d 884, 890 (Miss.1994). "As it stands, `intent' is like pornographyyou `know it when you see it.'" Id. The jury had the benefit of observing the witnesses and hearing the evidence at trial. From the facts and surrounding circumstances reflected in the record, this Court cannot say that the trial court erred in determining there was sufficient evidence to prove intent to distribute by Baskin and denying his motion for a directed verdict.

B. WEIGHT OF THE EVIDENCE
¶ 12. Additionally, this Court cannot disagree with the juror's resolution of conflicting evidence presented by both sides in the case sub judice. The issues were properly presented at trial and after weighing the evidence presented by both sides, the jurors found Baskin guilty. After review of the record, we cannot say that the verdict is against the overwhelming weight of the evidence, and therefore affirm the trial court. Bush, 895 So.2d at 844(¶ 18).

II. WHETHER THE SENTENCE WAS GROSSLY DISPROPORTIONATE
¶ 13. Further, Baskin challenges his sentence, arguing that it is grossly disproportionate to the crime with which he was charged. "Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." Nichols v. State, 826 So.2d 1288, 1290(¶ 10) (Miss.2002).
¶ 14. This Court must "look first at the question of whether an inference of disproportionality may be drawn from a comparison of the crime committed to the sentence meted out." Williams v. State, 784 So.2d 230, 236(¶ 16) (Miss.Ct. App.2000). We are to follow the direction of the United States Supreme Court in determining whether a sentence is unconstitutional. In Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637(1983), the Supreme Court mandated a three-prong analysis "to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of `gross disproportionality.'" Williams 784 So.2d at 236(¶ 16). However, we note that since Solem v. Helm, the Supreme Court has found that there is no guarantee of proportionality found in the Eighth Amendment. Harmelin v. Michigan, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); Hoops v. State, 681 So.2d 521, 538 (Miss.1996). Nonetheless, we continue the three-part analysis of Solem to determine the constitutionality of a sentence by reviewing:"(i) the gravity of *343 the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Solem, 463 U.S. at 292, 103 S.Ct. 3001.
¶ 15. We follow Rummel v. Estelle, 445 U.S. 263, 265-66, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) to determine the threshold comparison. Hoops v. State, 681 So.2d 521, 538 (Miss.1996). In Rummel, the Supreme Court upheld the defendant's sentence of life imprisonment for committing three separate crimes involving theft by fraud, false pretenses, and forgery amounting to a total of less than $250. Rummel, 445 U.S. at 265-66, 100 S.Ct. 1133. The Supreme Court held the "mandatory life sentence imposed ... does not constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments." Id. at 285, 100 S.Ct. 1133 (1980).
¶ 16. Further, the case sub judice is similar to that of Tate v. State 912 So.2d 919, 934(¶ 53) (Miss.2005), where Tate challenged his sentence of sixty years in prison without parole for a drug offense, arguing that the sentence was disproportionate, cruel, and unusual. Tate was given an enhanced sentence in light of his two prior felony convictions for the sale of marijuana. Id. The court found that "[i]t is within the Legislature's prerogative to determine that three crimes such as those committed by Tate can result in a sentence of sixty years without parole or chance of early release." Id.
¶ 17. Additionally, this court recently looked at a similar issue in Wright v. State 863 So.2d 1005 (Miss.Ct.App.2004), regarding whether a sentence amounted to cruel or unusual punishment.
The record, including proof of Wright's prior criminal convictions, indicated a persistent effort on Wright's part to traffic in illegal narcotics. The Legislature, in an attempt to combat the spread of drug use and to keep repeat offenders out of circulation for extended periods of time, has devised a system of punishment that includes lengthy incarceration for those individuals who repeatedly violate the state's drug laws. Wright fits plainly within that category since all of his convictions shown in the record relate to narcotic possession or narcotic trafficking. The sentences imposed are within the limits of those set out by the Legislature and, under the circumstances of this case, we do not conclude that they appear so unreasonably harsh as to invoke constitutional considerations of cruel and unusual punishment.
Id. at 1010(¶ 14).
¶ 18. According to the record, Baskin was previously convicted of two separate felonies. Baskin was convicted in 1994 of the sale of a controlled substance and sentenced to serve ten years in prison. Additionally, Baskin was convicted in 2000 of possession of a controlled substance. In the case sub judice, these two previous convictions were part of the record the trial judge considered when determining the sentence. Here, as in Wright, Baskin has a persistent history of crimes involving the possession or sale of a controlled substance. Additionally, it is significant that the Mississippi Supreme Court has "never found a maximum penalty in a drug case even if the sentences were to run consecutivelyto be cruel and unusual punishment." Johnson v. State, 950 So.2d 178, 184(¶ 24) (Miss.2007) (citing Braxton v. State, 797 So.2d 826, 829 (Miss.2000)). Baskin was aware of his own criminal history and chose to proceed to trial. Further, he was apprised of the perilous situation he faced if he were to be found guilty at trial. In light of the information contained in the record, this Court cannot find that the sentence imposed leads to an inference *344 of gross disproportionality or cruel and unusual punishment. This issue is without merit.

III. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE INDICTMENT TO BE AMENDED PRIOR TO SENTENCING BUT AFTER CONVICTION
¶ 19. Lastly, with regard to Baskin's argument that the trial court erred in allowing the State to amend the indictment after the verdict but prior to sentencing, we find this argument is without merit. In the case sub judice, as in Shumaker v. State, 956 So.2d 1078, 1087(¶ 24) (Miss.Ct.App.2007), the indictment was not amended until after the trial verdict but before sentencing. The court approved because "prior offenses used to charge the defendant as an habitual offender are not substantive elements of the offense charged." Id. at 1087(¶ 26) (citing Swington v. State, 742 So.2d 1106, 1118(¶ 44) (Miss.1999)). "The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made." Shumaker, 956 So.2d at 1087(¶ 25). Here, Baskin was advised, prior to trial, of the consequences of going to trial and receiving a guilty verdict in light of his past criminal history. From our reading of the record, this court cannot find that Baskin was prejudiced by the change in the indictment, since he was already advised of the risk of proceeding to trial, and was aware of both of his previous convictions.
¶ 20. Baskin also argues that the State's amendment of the indictment after the jury verdict but before sentencing was vindictive. "Where there is a `reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority,' there is a presumption of prosecutorial vindictiveness." Moore v. State, 938 So.2d 1254, 1264(¶ 30) (Miss.Ct.App.2006) (citing Alabama v. Smith, 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)). "However, when no such likelihood exists, it is the defendant's burden to prove actual vindictiveness." Id. (citing Alabama, 490 U.S. at 799-800, 109 S.Ct. 2201). From this Court's reading of the record, there does not appear to be actual prejudice imposed upon Baskin by the State. Here, the prosecutor offered a plea bargain in the presence of both Baskin and his counsel. The prosecutor submitted at the sentencing hearing that he conveyed to Baskin the dire consequences he could face if he proceeded to trial and were convicted, especially in light of his previous convictions. The State argued at sentencing that Baskin fully and consciously understood his decision to proceed to trial rather than accept the plea bargain. Baskin was free to accept or reject the plea bargain at issue. Further, according to information given by the State at sentencing, the State was originally aware of only one previous conviction. During the pre-sentencing investigation, the State was made aware of an additional conviction, to which Baskin was unquestionably already aware. From this Court's reading of the record, we cannot find that the trial court erred in allowing the State to amend their indictment prior to sentencing but after conviction. This issue is without merit.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF POSSESSION OF MARIJUANA WITH INTENT TO SELL AS A HABITUAL OFFENDER AND SENTENCE OF SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY OF EARLY RELEASE OR PAROLE *345 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.